v. Bill Johnson, President and CEO, CBA, and under C.A.P. 15 S. Versailles, panel, did they not? Oh, for the appellate. Well, I'm sorry. I like your long name. Yep. The old order of counsel question. All right. You can raise the podium if you like. Oh, yes. May it please the court, on behalf of Appellate Tennessee Valley Authority, Trisha Roelofs, with the court's permission, I would like to reserve three minutes for rebuttal. Good night. This case implicates the interplay between the federal disability discrimination laws and national security concerns arising from the operation of nuclear plants. The district court got that interplay wrong for two reasons. The first way that the district court got it wrong is that it ignored Title VII's national security exemption, which operates as a statutory bar to appellant's claims. To reach this correct conclusion, the court must first begin with the Rehabilitation Act, the statute under which appellant's claims arise. The Rehabilitation Act prohibits disability discrimination in federal employment, but does not provide for any remedies, rights, and procedures for an alleged violation. Instead, as set forth in 29 U.S.C. 794A, subsection A, the Rehabilitation Act incorporates the rights, remedies, and procedures as set forth in Section 717 of Title VII. The necessary next step for the court, then, is to determine what rights, remedies, and procedures does Section 717 provide. As the Supreme Court held in Chandler v. Rodebusch, Section 717 grants federal employees the full rights available in the courts as are granted to individuals in the private sector under Title VII. Now, although Section 717 explicitly mentions the enforcement provisions contained in Sections 706F through K, federal courts have routinely held that Title VII substantive standards apply to federal employees as well. Yes? And I appreciate you going through all of the statutes, but in reading this and considering TVA's position, isn't TVA basically asserting some kind of de facto preemption for anybody working at a place where the National Security Act may affect operations? Because here we're talking about somebody who failed a pulmonary functions test. Yes, Your Honor, that's correct. Not the kind of inquiry, really, that would be the same as whether or not somebody was entitled to a secure clearance. So to take your position, wouldn't we basically be saying that there is really a preemption for anybody who's working at a place where this kind of national security doctrine might be an issue? I don't think it's as broad as Your Honor may think. Our argument is that this arises under a specific provision of 10 CFR 7355, which governs the employment of nuclear security guards. Whether it would apply in other contexts would be a question for another day. I'm simply asking for a narrow ruling that it applies to this case. Of course, and why? Well, for two reasons. Under the National Security Exemption, which again applies to Rehabilitation Act claims. Well, wait, that's the issue, isn't it? I mean, the Rehabilitation Act enumerates various rights and remedies from Title VII, but the section of Title VII containing the National Security Exemption isn't among those enumerated sections. Yes, Your Honor, but as the Supreme Court stated in Chandler v. Rotterbusch, the intent of Section 717 was to give federal employees the full rights and remedies available in the federal courts, which of course presumes the lack of remedy if your termination was based on national security grounds or a law that was a regulation put in place on the ground. Would you think physicality would be a national security ground? It is in this case because the National Security Exemption says it is not an unlawful employment practice for an employer to discharge someone if, quote, the position is subject to any requirement imposed in the interest of national security of the United States under any security program in effect pursuant to or administered under any statute of the United States. The statute at issue here is Energy Reorganization Act, which creates a Nuclear Regulatory Commission, which in turn has imposed regulations that say that nuclear security guards cannot have any physical conditions that would preclude them from performing their security duties. In one sense, if you don't prevail and this goes back, I presume that then TVA would have to go through the arguments under the Rehab Act about BFOQ and about whether there's alternative jobs available and all that sort of thing. National Security Exemption says, hey, we want to have the discretion to fire people if they don't meet our standards, period. So you wouldn't be precluded from winning, but you'd have to go through a lot more hoops. Is that fair? Yes, that's fair, Your Honor. We wouldn't be precluded from winning, but what the court would have to do is look behind the decision that was made. So it would have to second guess the decision about whether this individual is physically capable of protecting the nuclear plant, which that decision is made by somebody who has special expertise that the courts may lack. And, again, the inquiry is- Special expertise, I can understand dealing with security clearances. That's the Egan case. But what's so special? I mean, this is a typical case that the courts deal with all the time about whether he's been discriminated against when he's maybe capable of being a security guard. Well, the regulations, Judge Gilman, specifically provide that the final determination is to be made by a physician who has knowledge of the site's security requirements. And so each nuclear site has specific security requirements, so the physician has to be familiar with the site and the security concerns specific to that site in order to make her determination. But, again, basically the national security apparatus wants to be able to say, we decide how fast or how fit or how strong the guard needs to be rather than fighting it out over, as Judge Gilman said, the more conventional way that we deal with things under the Rehab Act. That's correct, Judge Boggs, because, again, there's site-specific requirements that tell us how fast and how fit a certain guard needs to be, and that decision is made by a physician who, of course, knows about medical things and also knows about the site's security requirements. Well, wait. I mean, security clearance, in my mind, is most typically, is this person a foreign agent? I mean, is he a spy? Those are the kind of specialized expertise that deal with national security, as opposed to whether you're capable of lifting 10 pounds or 20 pounds or running a four-minute mile or a seven-minute mile. It is a different type of special expertise, but I would submit that it still is a special expertise. And I want to make clear that Title VII, the national security exemption, doesn't require the special expertise. That is under EGAN. Under the national security exemption, we only have to show that the individual was terminated for not meeting a requirement that was imposed in the interest of national security. Can you cite me a case where it's been specifically held that the Rehabilitation Act incorporates a national security exemption? No, Your Honor. There are EEOC cases which were cited in my brief, but they didn't do a specific analysis of why it was incorporated. The courts just assumed that. I think we need to assume that from the history and the grammatical context. Because what worries me, there's Title VI, which the Rehabilitation Act refers to Title VI remedies, and Title VI doesn't have where specific sections are incorporated. The whole thing is incorporated, rights and remedies. Whereas for Title VII, it seems to designate specific sections, and those sections do not include the national security exemption. Well, I think we have to assume that Congress knew what the law was when it added Section 717, which brought federal employees within its ambit, and the law contained a provision that already said, notwithstanding any other part of Title VII, it is not an unlawful employment practice for an employer to discharge somebody if the position is subject to any requirement imposed in the interest of national security. The portion of Section 794A that incorporates Title VII's rights and remedies was intended to give federal employees the same rights and remedies that they already had under Title VII. In a sense, it's a procedural mechanism, but of course the procedural mechanism assumes what rights are and are not available. And to discharge somebody based on a national security concern simply is not an unlawful employment practice. And your position, as I understand it, is that based on that national security position, that this is really not, that that decision is not subject to judicial review, but you also don't have a case, I'm assuming, that says exactly that. I have cases that say that these types of decisions are not subject to judicial review generally, but I do not have a case that says that the Rehabilitation Act, that this would apply to the Rehabilitation Act. This would be the case. And the cases that you have, do those cases deal with people who are similarly situated, I mean have physical ailments that are swept under this national security umbrella as you seek to do in this case? No, I don't have a case that involves a physical ailment, but I would point out that the statute simply says that the position has to be subject to any requirement imposed in the interest of national security. And the regulations at 10 CFR 73.55 make clear that they are imposed in the interest of national security. The entire reason that we have a security force at the nuclear plant is to make sure that the operation of the plant is not, doesn't cut against the common defense of national security. That's in the statute. And so the Title VII's national security exemption doesn't make any differentiation between physical difficulties or security clearances. But based on your interpretation, and I know you said before that the scenario I put out was too broad, but it seems like based on your statement and your reading of the reg, that again you have the position that any employee of that facility could be discharged for any reason and it's not subject to judicial review because it's in the interest of national security. So all employees of that facility would have none of those protections based on your interpretation of that language. That would, again, be based only on the specific regulation, Judge Donald, because I'm not saying that no nuclear employee ever gets any rights ever. What I'm saying is that under the national security exemption, if the position is subject to a requirement imposed in the interest of national security and the employee fails to meet that requirement, then yes, the employee's claim would not be subject to judicial review. The difference would be if the requirement was that they have five years of prior secretarial experience, then we might question whether that requirement was imposed in the interest of national security. I can't imagine that would be in the interest of national security. Whereas here at least, I don't think they're, I don't know, whether they're arguing that the guard standards are not imposed in the interest of national security. Are they arguing that? It's who arguing? Is the other side arguing that this requirement is not imposed in the interest of national security? Yeah, if I may, I see my time is up, if I may answer. The appellee is arguing that the specific regulation upon which I'm relying does not mention the pulmonary function test, which is what he failed. My response is the pulmonary function test is just a way of measuring, it's just a measurement standard. The doctor can't just look at you and say you look good. There has to be some standard of measurement. All right. Thank you, Your Honor. Thank you, counsel. You'll have your three minutes for rebuttal. Thank you very much. Thank you. Doug Hamill on behalf of James Hale. In this case, I think Your Honors have sort of hit the nail on the head. TVA's arguments are extremely broad and, in this case, rather extreme because what they're asking for is blanket immunity, not only in this case, but it has implications on a variety of personnel, not just personnel that works for nuclear power plants owned by TVA, nuclear power plants that could be owned by private entities and other employees in industries such as the FBI or the CIA that work. Why would it apply to private industries? That is, I thought this was strictly federal employment, the statute that you're bringing them under. Some of us kind of wonder if TVA is really federal, but I guess it is, whereas there are lots of nuclear plants owned by ordinary electric utilities. Right. Well, and again, in this case, there are, for example, their argument that the ADA, for example, applies in the private sector to disabled employees. While the ADA also grabs or incorporates some provisions of Title VII, again, this is an argument just because the ADA and just because the Rehab Act incorporate certain provisions of Title VII, they certainly don't incorporate all provisions of Title VII. The Egan Doctrine, which they're arguing for an extension, applies, quite frankly, to both private and public or federal employers. There's a plethora of case law extending the Egan Doctrine to private entities as well as federal corporations. So in our vantage point, it's a very dangerous proposition, a very dangerous argument because what's happening, it's eviscerating a lot of the federal anti-discrimination and anti-retaliation laws, basically taking it away from the court's ability to adjudicate anything when it comes to these issues. First, let me speak to the national security exemption. Judge Gilman, you are correct. The Rehab Act only incorporates Section 717 of Title VII, and that's from Section 794A1 of the Rehab Act. The language is plain. The language is unambiguous. Therefore, this court really doesn't have to go any further as far as statutory interpretation. It ends there. If there's any doubt as to whether it's plain and ambiguous, just looking at the next provision, Section 794A2, Congress knew full well how to incorporate all or part of the Civil Rights Act of 1964. For Section 794A2, it incorporated all of Title VI, which deals with entities that receive federal funding. So that covers housing cases, education cases, public assistance cases. So when Congress passed this, Congress knew what it was doing. There's no reason to go any further extending the Rehabilitation Act to all of Title VII and incorporating all of Title VII's provisions. With respect to the Egan Doctrine, the Egan Doctrine has primarily been construed as a very, very narrow doctrine, which applies to protection of classified and sensitive government information. Almost all of the cases within the Egan Doctrine, including the Egan case, dealt with security clearance determinations. That's nowhere close to what this case is about. This case is about physical conditions and security clearance cases. Again, the predictive judgments that these agency heads are in charge of is determining a person's moral characterization. Are they trustworthy enough to deal with the protection of classified information? It's an inexact science. In this case, Mr. Hale is challenging whether passage of a pulmonary function test, whether that is necessarily tailored to whether a nuclear security officer can do his or her job at TVA. This has nothing to do with trustworthiness, the protection of classified information. In fact, the record is devoid of any evidence that Mr. Hale or any nuclear security officer at the Sequoia nuclear plant came in contact with classified information. Okay, but that's the Egan Doctrine. As to the other aspect, isn't there a pretty good argument that we'd like things that have a national security component to, at least initially, to be subject to the judgment of the people on the spot and not courts? I mean, there's a long history of litigation in these TVA and DOE facilities about how fast the guards have to be in order to keep people from blowing up the nuclear plant or stealing the nuclear materials. And isn't there a fairly decent argument that we'd prefer those to be made by security personnel rather than by courts? TVA would have a good argument if, for example, passage of a pulmonary function test was mandated by the Nuclear Regulatory Commission. That's not the case here. That's exactly the narrow issue that's before this court. You see, in order for the national security exemption to apply, not only does the position of the nuclear security officer have to be regulated under a security program such as the Nuclear Regulatory Commission, but it has to be subject to a requirement that's imposed by the Nuclear Regulatory Commission. Okay, so when we're talking requirement imposed by, am I right that the NRC requires the guards, I don't know what the language is, to be fit and able and so on, and then what the TVA people put this particular test in. Is that fair? You're correct, Your Honor. The TVA has added to a mandated requirement that is not a requirement of the NRC. Well, when we say added to, isn't it really a way of interpreting it? In other words, the NRC, do you want the NRC to have to put in, you have to run a mile in 12 minutes and you have to be able to lift 50 pounds in order for this to be an application? Yes. In fact, the NRC has very specific requirements. I mean, there's a plethora of requirements out there that the NRC mandates, and they get down and dirty with the technical details. For example, the qualifications, the weapons testing qualifications, they get pretty specific with respect to that. The physical fitness requirements, they require, I think it's testing the physicality, the agility, the endurance, which is what TVA did as a separate component when they revamped their fitness for duty qualification standards. And again, in this case, the evidence shows that Mr. Hale passed all of the physical fitness requirements. TVA, in this case, contends that it implemented the pulmonary function test to test whether he could wear a gas mask for an extended period of time during a plant attack. The NRC has some regulations that deal with gas mask testing, but those regulations only require that a nuclear security officer demonstrate the ability to don and doff a gas mask and be able to, I believe, shoot accurately at targets during a weapons qualification test, which he did. In this case, there's not a challenge to NRC's abilities to mandate specific requirements. In fact, it's our contention that Mr. Hale has passed all of the NRC's mandated requirements. This is a situation under the Rehabilitation Act where we are asking, as an alternative, a reasonable accommodation, which was to allow TVA, to allow Mr. Hale to go through what's called a practical gas mask test. Strap on a gas mask and let him run through his paces, which they did the year prior, and he passed that. And these are situations that courts deal with quite frequently. In fact, I believe there was a case, and I don't remember which circuit it was, dealing with officers that were attached to the court system and whether they could adequately do their jobs if they were wearing a hearing aid versus without a hearing aid if they could protect the court officers and the court personnel. Again, these are situations that come up frequently. Judges and the court system can objectively look and see whether a person's physical requirements and a person's physical disability can be accommodated or if that condition cannot be accommodated or if that condition knocks them out of their ability to perform the essential functions of their job. Do you have any other questions for me? Assuming that you prevail here and it goes back, would there then be potentially litigation over these effectively facts that you presented in terms of how adequately he could perform the job? I mean, you've given us some facts that sound good for you, but in litigation, frequently the other side has facts. So do you agree that this would then be subject to the conventional litigation under the Rehab Act? Yes, Your Honor. Anything else? Okay, thank you, counsel. Ms. Roloff, you have three minutes for rebuttal. And you might at some point address part of this business about the difference between the specificity of the NRC's requirements and then TVA's requirements. Yes, Your Honor. In terms of the specificity of the NRC requirements versus TVA's requirements, as Mr. Hamill pointed out, there's a plethora of requirements. The physical fitness requirements are separate from the weapons testing requirements and are also separate from the requirement that a nuclear security guard cannot have any physical conditions that would adversely affect their performance of assigned security duties and responsibilities. And so, again, the PFT, the pulmonary function test, is just a way of measuring that. And the regulations themselves say that TVA has the discretion to measure that based on their knowledge of the site security requirements. And so really to argue that the only thing at issue is the pulmonary function test is too narrowly construed this case. You're challenging our jurisdiction under the National Security Exemption and the Egan Doctrine, right? And that's really what we're dealing with on appeal. Yes, Your Honor. That's correct. And to address some of the concerns that Mr. Hamill raised, this case will not take away anything that Congress has not already taken away in the National Security Exemption. That's been in the statute since 1964, and it's always been assumed that if there's a national security issue, that that's going to overrule any valid concerns about employment discrimination. And so I'm not asking the court to make any extension there. I'm simply asking it to apply the language of that statute to Mr. Hale's claims. Is the reason that this is sort of first impression that people in this situation just haven't challenged it in the past? That is, I know, you know, I don't agree that this would extend to all nuclear plants, but TVA manages, what, 8, 10, 12, something like that. And so they've got to have a lot of guards, and they've got to have some of them that have run into this problem before. We have three plants. But, yes, I've often thought to myself that same question, but I think it's just somebody hasn't read through the whole statute. It's kind of in the middle there. TVA only has three nuclear plants? It has three plants. It has Sequoia and Wadsworth. But there are multiple units. There's multiple units, yes. Okay, that's what I meant. The number of individual reactors is more than three, okay. Yes, so I think it's seven or eight units. We just had a new one online. Yes, that's correct, Your Honor. Unless the court has any additional questions for me, I see my time is up. Okay, thank you, counsel. Thank you. The case will be submitted. Thank you very much. Let me call the next case.